IN THE UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| **NANCY CASIANO MONTAÑEZ, et al.**<br>**Plaintiffs**<br><br>**v.**<br><br>**STATE INSURANCE FUND, et al.**<br>**Defendants** | Civil No. ll-1002 (DRD) |

**OPINION AND ORDER**

Plaintiffs, who are twelve (12) dismissed or demoted employees of the State Insurance Fund ("SIF"), brought the instant action against the SIF and several of its officers. Plaintiffs' allegations are, *inter alia,* based on alleged First Amendment Political Discrimination, Fifth and/or Fourteenth Amendment Due Process violations, and Fourteenth Amendment Equal Protection transgressions. See 42 U.S.C. § 1983. Plaintiffs also seek relief under the Constitution of the Commonwealth of Puerto Rico and Puerto Rico law. *See* 31 L.P.R.A §§5141-42. Pending before the court is Defendants' motion to dismiss the complaint "for failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, the motion is hereby **GRANTED IN PART** and **DENIED IN PART**.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, who are all members of the Popular Democratic Party ("PDP"), are twelve (12) dismissed or demoted employees of the SIF. The SIF is a public corporation that provides to all workers of Puerto Rico compensation and health care for those employees injured during the

1

course of their employment. Before their dismissal, between the years of 2001-2008, plaintiffs were appointed to various positions at the SIF through an internal job-posting procedure. After a subsequent audit, which was aimed at examining various personnel transactions, approximately two hundred and thirty-two (232) appointments were declared null, including the Plaintiffs'. They were informed of the SIF's intention to dismiss or demote them from their career positions throughout a letter sent on January 8, 2010 that was signed by defendant Zoimé Álvarez Rubio, then the newly appointed administrator of SIF. Nevertheless, Plaintiffs claim that the basis for these dismissals is political retribution, and a systematic scheme to get rid of PDP sympathizers. They also allege that the audits were performed as a pretext to justify the political motive behind the dismissals and the defendants' unconstitutional and illegal actions. See Docket No. 1.

On March 5, 2012, the Court entered an *Opinion and Order* (Docket No. 30) dismissing the case based on *Younger* abstention. On February 7, 2013, the First Circuit Court reversed the order dismissing the Plaintiffs' action and remanded the case with instructions to stay the proceedings pending the Puerto Rico Supreme Courts' ruling in González-Segarra v. CFSE, 188 D.P.R 252 (2013). See Docket No. 35. Given that Puerto Rico's highest court had granted a petition to review a similar case also against the SIF, with similar legal claims, the First Circuit concluded that it was "preferable to allow the Commonwealth court to resolve the controlling issue of Puerto Rico law first." Id. In making this pronouncement, the First Circuit recognized the possibility "that the plaintiffs' political discrimination claim is not synonymous with their due process claim and, thus, will not necessarily be resolved by answering the unsettled state law question," which was poised to be resolved in González-Segarra. Id. at p. 11.

On March 19, 2013, the Puerto Rico Supreme Court issued its opinion on the González-Segarra case, which holds that the appointments made through the internal job postings violated

2

SIF's rules and regulations and were contrary to the merit principle. Nevertheless, the court failed to address the Political Discrimination claims further than mentioning in passing that these were discussed by the Commonwealth's Court of Appeals and during the administrative proceedings.

On April 24, 2014 Defendants filed a *Motion to Dismiss (*Docket No. 60) averring that Plaintiffs' complaint fails to allege specific acts to sustain their Political Discrimination claims and is based on no more than mere conclusory statements. They also affirm that Plaintiffs fail at stating a veritable Due Process claim and neglect to offer factual allegations to distinguish their Equal Protection claims from their Political Discrimination claims. On May 25, 2014, Plaintiffs opposed said motion by arguing that they have complied with the required pleading standards. See Docket No. 73.

Finally, on June 20, 2014, the defendants submitted an *Informative Motion* (Docket No. 79) asking the Court to acknowledge a First Circuit decision filed on June 19, 2014. See Reyes-Perez v. State Ins. Fund Corp., 755 F.3d 49 (1st Cir. 2014). The Court agreed to consider the case before making a final determination on the motion to dismiss.

## II. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek the dismissal of a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint dismissed pursuant to Rule 12(b)(6) "is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of a short and plain statement of the claim showing that the pleader is entitled to relief." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

A short and plain statement is one that provides the defendant of fair notice regarding the claim and the "grounds upon which it rests." Id. However, a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 127 S.Ct. 955, 1965, 167 L. Ed. 2d 929 (2007). Therefore, "factual allegations must be enough to raise a right to relief above the speculative level," thus requiring a plaintiff to present allegations that nudge their claims "across the line from conceivable to the plausible." Id. at 570.

Determining the plausibility of a claim is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A claim is said to be plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico, 628 F.3d 25 (1st Cir. 2010). Furthermore, the plausibility standard requires that a plaintiff's claim suggest "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

An inquiry into plausibility requires a two-step process. Garcia-Catalán v. U.S., 734 F.3d 100 (1st Cir. 2013). First, the Court should begin by separating "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013). The second step of the inquiry process requires the Court to "consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief." Morales Cruz v. Univ of PR, 676 F.3d 220, 224(2012). In doing so, the complaint "must be read as a whole." Garcia-Catalan at 103. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove

4

the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010). Moreover, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that the actual proof of those facts is improbable. Twombly, 550 U.S. at 556. When completing this analysis, if nothing more than the mere possibility of misconduct can be inferred by the well-pleaded facts, "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In assessing a motion to dismiss pursuant to Rule 12(b)(6), the court shall accept all well-pleaded facts as true, and shall draw all reasonable inferences in favor of the pleader. Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012). The court may "augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible of judicial notice." Rodríguez- Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013).

"The bottom line is that the combined allegations, taken as true, must state a plausible, not merely conceivable, case for relief." Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 718 (1st Cir. 2014). With these caveats in mind, the Court turns to the arguments of Defendants' motion.

### III. ANALYSIS

*Section 1983 Claims in General*

Section 1983 "creates a private right of action for redressing abridgments or deprivations of federally assured rights." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005). Given that a section 1983 claim does not contain a built in limitations period, a

court addressing this type of claim must borrow "the appropriate state law governing limitations unless contrary to federal law." Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003). According to the Supreme Court, section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989).

A claim pursuant to section 1983 must satisfy two essential elements: "the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008).

Finally, "while plaintiffs are not held to higher pleading standards in §1983 actions, they must plead enough for a necessary inference to be reasonably drawn." Torres-Viera v. Laboy-Alvarado, 311 F.3d 105, 108 (1st Cir. 2002). Plaintiffs' section 1983 claims, as expressed below, are grounded upon infringements of the First, Fifth and/or Fourteenth Amendments.

*Plaintiffs' Due Process Claims*

The Fifth Amendment's Due Process right stems from the following provision: "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . ." U.S. CONST. amend. V. However, the Supreme Court interpreted the first ten amendments of the constitution (the Bill of Rights) to be enforceable only against the federal government. Barron v. City of Baltimore, 32 U.S. 243 (1833) ("The constitution was ordained and established by the people of the United States for themselves, for their own government, and not for the government of the individual states."). Subsequently, the Fourteenth Amendment—which contains its own Due Process clause—was enacted. The Fourteenth Amendment provides that

"[n]o **state** shall . . . deprive any person of life, liberty, or property, without due process of law." (emphasis provided). U.S. CONST. amend. XIV, §1. It is unclear if the Due Process clause applies to Puerto Rico—which is not one of the fifty "states" of the union—via the Fifth Amendment, the Fourteenth Amendment, or both. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 668 n. 5 (1974).[1] However, regardless of their precise constitutional origins, Due Process rights are enforceable against the Government of Puerto Rico. Id.

Plaintiffs' Due Process claims are premised on both procedural and substantive due process. See Docket No. 73. The right to substantive due process "implicates the essence of state action rather than its modalities." Ford v. Bender, 768 F.3d 15, 23-24 (1st Cir. 2014). This right protects individuals from state actions that are "arbitrary and capricious, run counter to the concept of ordered liberty, or appear shocking or violative of universal standards of decency." Amsden v. Moran, 904 F.2d 748, 753-54 (1st Cir.1990).

On the other hand, "the heartland of the right to procedural due process, as the name implies, is a guarantee of fair procedure." Ford, at 24. Therefore, individuals who are threatened with the deprivation of a significant liberty or property interest by the State are entitled to receive notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." Amsden, 904 F.2d at 753.

---

[1] "Unconstitutionality of the statutes was alleged under both the Fifth and Fourteenth Amendments. The District Court deemed it unnecessary to determine which Amendment applied to Puerto Rico, see Fornaris v. Ridge Tool Co., 400 U.S. 41, 43—44, 91 S.Ct. 156, 157—158, 27 L.Ed.2d 174 (1970), and we agree. The Joint Resolution of Congress approving the Constitution of the Commonwealth of Puerto Rico, subjects its government to 'the applicable provisions of the Constitution of the United States,' 66 Stat. 327, and 'there cannot exist under the American flag any governmental authority untrammeled by the requirements of due process of law as guaranteed by the Constitution of the United States.' Mora v. Mejias, 206 F.2d 377, 382 (1st Cir. 1953) (Magruder, C.J.). See 48 U.S.C. § 737."

Calero-Toledo, 416 U.S. at 668 n. 5.

Pursuant to the Fourteenth Amendment, a procedural due process claim regarding the deprivation of a property right by state action must "include a showing that state law protects an identified property right said to have been violated." Caesars Massachusetts Mgmt. Co., LLC v. Crosby, No. 14-1681, 2015 WL 627213, at *3 (1st Cir. Feb. 13, 2015). Furthermore, "the substantive due process claim for deprivation of property by the arbitrary exercise of government power…requires a like demonstration of a property right infringed." Id. See Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 8 (1st Cir. 2005).

In Board of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972), the Supreme Court held that property interests under the Due Process clause of the Fourteenth Amendment are not created by the Federal Constitution but, rather, "**are created, and their dimensions defined, by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.**" (emphasis supplied). Therefore, "**whether the plaintiffs had a protected property interest in their jobs is a question of state law.**" Costa-Urena v. Segarra, 590 F.3d 18, 26 (1st Cir. 2009). (emphasis ours).

Under Puerto Rico law, career employees are granted a property interest in their continued employment. Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000). Career employees are those that hold "permanent" positions, were selected with reference to the merit principle, and may only be removed from their appointments "for cause and after certain procedures are followed." Costa-Urena, 590 F.3d at 22. Nevertheless, "to possess constitutionally protected property interests in their career positions, the plaintiffs must have *valid* claims to those positions." (emphasis in original). Id at 27. "Public employees hired for career positions in violation of the Puerto Rico Personnel Act, or agency regulations promulgated

8

there under, may not claim property rights to continued expectations of employment because their career appointments are null and void *ab initio*." (emphasis in original). Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988). (The Court in Kauffman citing from Puerto Rico Law that career appointments are null *ab initio* if the requirements for granting the appointments are not followed.) See Colón v. Mayor of Municipality of Ceiba, 112 D.P.R. 740 (1982); Franco v. Municipality of Cidra, 113 D.P.R. 260; Laboy v. Commonwealth of Puerto Rico, 115 D.P.R. 190 (1984). Therefore, according to Kauffman, career appointments that result of "an act contrary to law" are deemed void. Kauffman, 841 F.2d at 1174.

The Personnel Act sets up a merit system for career employees, under which "career employees must, among other requirements, pass a competitive examination to be eligible for appointment or promotion to a career position." Gonzalez-De-Blasini v. Family Dep't, 377 F.3d 81, 86-87 (1st Cir. 2004). Therefore, if the appointment contravened Puerto Rico's laws and/or regulations, an employee's Due Process claim is not valid.

At the core of this claim is whether the plaintiffs have a property interest, under Puerto Rico Law, in their former positions at the SIF. Although the plaintiffs are career employees, and the general rule is that these are entitled to a property interest of their continued employment, this right is limited to employment obtained through a legally valid appointment process. As previously stated, the Puerto Rico Supreme Court held in González-Segarra that appointments made through the internal job posting procedures both violated SIF's prior rules and regulations and were contrary to the merit principle. All twelve Plaintiffs in the instant matter came to be appointed to their former employment positions through, precisely, this invalid internal procedure. Therefore, the employment positions are void and null *ab initio* for contravening local law. Furthermore, it must be noted that in cases such as this, which involve questions of state

law, "federal courts shall stay their hand and defer to the state's highest tribunal . . ." Arizonans for Official English v. Arizona, 520 U.S. 43, 76 (1997).

Given the nullity of their appointments, Plaintiffs do not possess a property right over their former employment positions and therefore fail to state an adequate due process claim pursuant to the Fifth and/or Fourteenth Amendment. Accordingly, Plaintiffs' substantive and procedural Due Process claims are hereby **DISMISSED WITH PREJUDICE.**

*First Amendment Claim*

"It is now well established that political patronage restrains freedom of belief and association, core activities protected by the First Amendment." Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000). Accordingly, the First Amendment protects non-policy-making government officials from adverse action by their employers based on their political affiliation. Welch v. Ciampa, 542 F.3d 927, 938 (1st Cir. 2008).

Defendants assert that this Court should dismiss Plaintiffs' Political Discrimination claims based on the PR Supreme Court's opinion in González-Segarra and Plaintiffs' failure to state a claim upon which relief can be granted. We disagree.

Although Puerto Rico's highest court held that the SIF appointments—which were based on invalid internal job-posting procedures—were null, the court's decision does not extend beyond a finding of the illegality of these employments. Hence, the Puerto Rico Supreme Court did not address any Political Discrimination claims.[2] Thus, given that the Puerto Rico Supreme

---

[2] The First Circuit precisely contemplated this possibility:

> We recognize, of course, that the plaintiffs' political discrimination claim is not synonymous with their due process claim and, thus, will not necessarily be resolved by answering the unsettled state law question. If that claim is not rendered moot by the

Court did not rule over this matter, and the fact that showing that an appointment is illegal under local law is not sufficient to defeat a Political Discrimination claim at the pleading stage, see Sueiro Vazquez v. Torregrosa De la Rosa, 380 F. Supp. 2d 63, 72 (D.P.R. 2005) (rejecting such an argument at the summary-judgment stage), we proceed to evaluate if Plaintiffs' claims survive the Twombly-Iqbal plausibility scrutiny.

An actionable claim of political discrimination under §1983 must encompass four elements:

> (1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action.
>
> Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 13 (1st Cir. 2011).

However, these elements, although necessary to establish a prima facie case, are not a pleading requirement, but an evidentiary standard. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002). See also Educadores Puertorriqueños en Accion v. Hernandez, 367 F3d 61, 66 n. 1 (1st Cir. 2004) (Stating that "*Swierkiewicz* is fully applicable to all civil rights actions.")

Therefore, "the prima facie case is not the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold." Rodriguez- Reyes, 711 F.3d at 51. In order to achieve plausibility, a complaint need not plead facts sufficient to establish a *prima facie* case, or allege every fact necessary to succeed at trial. Carrero-Ojeda, 755 F.3d at 718.

---

> Puerto Rico Supreme Court's decision, the parties will have their chance to argue it in federal court at a later date. We are not surrendering federal court jurisdiction over either federal claim, but simply staying the proceedings until the related Commonwealth proceedings have run their course.
>
> Docket No. 35, p. 11.

Consequently, "the prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint." Rodriguez- Reyes at 54. Nevertheless, these elements remain relevant to our plausibility assessment, given that they are part of the background against which a plausibility determination should be made. Medina-Velazquez v. Hernandez-Gregorat, 767 F.3d 103, 108-09 (1st Cir. 2014).

> The elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim. Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial—in a discrimination case, the prima facie standard—she need not plead facts sufficient to establish a prima facie case.
>
> Rodriguez-Reyes at 54.

Furthermore, "there need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action." Carrero-Ojeda at 718. The prima facie elements should be used as reference in helping the court determine if the cumulative effect of the complaint's factual allegations state a plausible claim for relief. Id.

Having established the previous foundation, we proceed to evaluate Defendants' move to dismiss Plaintiffs' Political Discrimination claims. In doing so, we review the combined non-conclusory allegations, taken as true, while using the prima facie elements as background reference for our determination on plausibility.

The first element of a political discrimination complaint requires Plaintiffs to demonstrate that they and Defendants have opposing political affiliations. The First Circuit has previously upheld that, at this stage, it is sufficient for an allegation to state that Plaintiffs and Defendants are associated with different political parties. See Ocasio-Hernandez, 640 F.3d at 13. In the instant matter, Plaintiffs allege that they are registered members of the PDP, and that

Defendants' are well-known members and activists of the NPP. See Docket No. 1. Therefore, the allegations here adequately satisfy the first component of the inquiry as required at this stage of the proceedings.

The second element instructs Plaintiffs to establish that the Defendants were aware of their political affiliation. As stated in the complaint, the SIF is a politically charged environment, where employees are organized according to political organizations and knowledge of political affiliation is commonplace. These political organizations engage in fund-raising activities and provide support during electoral activities. See Docket No. 1.  The Court deems this second prima facie element plausible as well.

The third element is no obstacle as the complaint is clear that each of the twelve Plaintiffs were either dismissed or demoted.  These are undisputedly adverse-employment actions. The Court need proceed no further on this third prima facie prong.

Finally, the fourth prong requires plaintiffs to establish that political affiliation was a substantial or motivating factor of the adverse-employment action. Here, Plaintiffs were dismissed and demoted from their employment positions at SIF. As we previously established, although local law has declared their appointments null, this is not enough to defeat a Political Discrimination claim at the pleading stage. The Court turns now to several allegations and inferences of the complaint.[3]

At the outset, Plaintiffs allege that the audits were performed as a pretext, and that the basis for these dismissals is political retribution, and a systematic scheme to get rid of PDP sympathizers. See Docket No. 1. Moreover, the Court finds that the circumstances surrounding the audit, which was aimed at scrutinizing personnel transactions, are quite indicative of political

---

[3] The court does not hint at all that the same result will be achieved at other subsequent procedural events.

discrimination. The audit occurred shortly after a PNP Governor came into power, which was preceded by eight years where two PDP Governors were in power. See Docket No. 1. Finally, and most critical, the audit was alleged to have been conducted only with respect to the years of 2001-2008, which were years when the PDP Government was in power. Id. Consequently, Plaintiffs have plausibly pleaded the fourth prima facie requisite.

Considering the previous analysis, we believe that the pleadings read as a whole sufficiently describe a plausible discriminatory action. At this stage of the proceedings, "no more is required to unlock the doors of discovery for these plaintiffs." Ocasio-Hernandez, 640 F.3d 1 at 19. Therefore, we hereby **DENY** Defendants' move for dismissal of Plaintiffs' Political Discrimination claims.

*Plaintiffs' Equal Protection Claim*

The Equal Protection clause of the Fourteenth Amendment provides that: "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U. S. CONST. amend. XIV §1. Accordingly, the Equal Protection clause requires that "all persons similarly situated be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). Two elements are required to establish a valid Equal Protection claim:

> (1) that the person, compared with others similarly situated, was selectively treated; and
> (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013).

However, the First Circuit Court has made clear that "political discrimination and retaliation claims under the First Amendment cannot be restated as claims under the Equal Protection Clause." Uphoff Figueroa v. Alejandro, 597 F.3d 423, 426 (1st Cir. 2010); See also Rosaura Bldg. Corp. v. Municipality of Mayaguez, No. 13-1676, 2015 WL 467448, at *9 (1st Cir. Feb. 4, 2015) (holding that Plaintiffs' "equal protection claim fails because it is a mere restatement of its First Amendment claim and based on the same facts."); Morales–Santiago v. Hernández–Pérez, 488 F.3d 465, 471 (1st Cir. 2007) (dismissing plaintiffs' Equal Protection claim in light of overlap between plaintiffs' Equal Protection and First Amendment claims); Pagán v. Calderon, 448 F.3d 16, 36 (1st Cir.2006).

Similar to the previous cases, the Equal Protection claim before us is based on the same factual background that Plaintiffs rely upon for their Political Discrimination claims. Plaintiffs fail to establish any indicative facts to sustain that they were selectively treated other than those based on political discrimination.

Accordingly, Plaintiffs' Equal Protection claims are hereby **DISMISSED WITH PREJUDICE,** as said claims arise from the same set of facts of their First Amendment Political Discrimination claims.

*Supplemental State Law Claims*

Defendants move the Court to dismiss the supplemental State Law claims because all of the federal claims should be dismissed. Under 28 U.S.C.A. §1367 "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Defendants' contention is undermined by the fact that Plaintiffs' Political Discrimination claims have

survived the motion to dismiss. Therefore, Defendants' move to dismiss Plaintiffs' supplemental State Law claims is hereby **DENIED.**

## IV. CONCLUSION

In view of the foregoing, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss. See Docket No. 60. Plaintiffs' substantive and procedural Due Process claims and Plaintiffs' Equal Protection claims are **DISMISSED WITH PREJUDICE.** However, Plaintiffs' First Amendment Political Discrimination claims and substantive State Law claims remain viable causes of action.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of March, 2015.

/s/ DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. District Judge