## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Nancy Casiano-Montanez, et al.**<br>Plaintiffs | |
| v. | **Civil No. 11-1002 (DRD)** |
| **State Insurance Fund Corporation, et al.**<br>Defendants | |

## OPINION & ORDER

Eleven (11) current and former employees ("Plaintiffs") of the State Insurance Fund Corporation ("SIFC") filed suit against the SIFC, several of its officers, and the conjugal partnerships of each ("Defendants"). Allegedly, Plaintiffs suffered adverse employment actions due to their political affiliations. Defendants moved for summary while Plaintiffs moved to dismiss their claims against two defendants. The stage is set below.

### I.   INTRO

#### A. The Facts

"We rehearse the facts as they appear in the summary judgment record, drawing all reasonable inferences in favor of the parties opposing summary judgment." *Perez v. Lorraine Enterprises, Inc.*, 769 F.3d 23, 26 (1st Cir. 2014) (citing *Bisbano v. Strine Printing Co.*, 737 F.3d 104, 106 (1st Cir. 2013)).

Plaintiffs, all members of the Popular Democratic Party ("PDP"), are composed of a group of nine current and two former employees of the SIFC.[1] The SIFC is a public corporation and agency of the local executive branch that provides worker compensation and health care for employees injured during the course of their employment.

---

[1] Not included is Rosaura Reyes-Ramos who was "[a]pparently . . . included . . . in error" and is a plaintiff in another case against the SIFC. *See* Docket No. 109 and Civil Case 10-cv-1555 (CCC). The Court previously granted her request for voluntary dismissal. *See* Docket No. 113.

Between January 1, 2001, and December 31, 2008, each plaintiff was appointed to a career position in the SIFC. It should be noted that the PDP had control of the executive branch for this entire eight-year stretch. However, once the newly elected governor from the New Progressive Party ("NPP") came into power on January 1, 2009, Zoimé Álvarez-Rubio was appointed as the new Administrator of the SIFC.

Subsequently, the SIFC audited all personnel transactions from January 1, 2001, to December 31, 2008, to make sure that all of the "regulations and procedures," especially the merit principle, were followed. Docket No. 132-1 at p. 2, ¶ 3. After all 3,835 SIFC employees at the time had their employment files examined, it was discovered that 232 of these appointments—including those of Plaintiffs—were illegal.[2] Specifically, these appointments did not comply with the merit principle, as they were not subject to public competition. Without exception, all 232 appointments were nullified. The instant lawsuit ensued.

### B. The Procedure

Plaintiffs brought suit against the SIFC; the Administrator of the SIFC, Zoimé Álvarez-Rubio; the conjugal partnership formed by Zoimé Álvarez-Rubio and her husband; former Director of the SIFC Human Resources Department, Saúl Rivera-Rivera; the conjugal partnership formed by Saúl Rivera-Rivera and his wife; Executive Director of the Industrial Hospital, Jorge García-Ortiz; the conjugal partnership formed by Jorge García-Ortiz and his wife; Administrator of the Industrial Hospital, Ernesto Santiago-Zayas; the conjugal partnership formed by Ernesto Santiago-Zayas and his wife.

---

[2] It is worth noting that the Supreme Court of Puerto Rico agreed that 20 of these 232 appointments were illegal. *See González-Segarra v. CFSE*, 188 D.P.R. 252 (2013) (unnumbered English translation available on Westlaw search engine). The high court expressed no view on the other 212 appointments, as they were not plaintiffs in said case.

Plaintiffs invoked various federal and state law causes of action.  First Amendment political discrimination is the sole remaining federal cause of action.[3]  Plaintiffs essentially contend that the audit was really just a pretext to discriminate against the many PDP members who were appointed during the eight-year PDP regime.  With respect to this claim, Defendants moved for summary judgment on three grounds: (1) Plaintiffs are unable to establish a prima facie case of political discrimination, (2) Defendants prevail on *Mt. Healthy* grounds, and/or (3) individual capacity Defendants are entitled to qualified immunity.

Plaintiffs responded in unorthodox fashion.  On the same date that the opposition to summary judgment was due, Plaintiffs moved to dismiss the case without prejudice against two defendants (Ernesto Santiago-Zayas and Jorge García-Ortiz) and opposed the summary judgment of the remaining defendants.[4]  *See* Docket No. 141 at p. 2, footnote 1 ("plaintiffs have requested voluntary dismissal as to defendants Ernesto Santiago-Zayas and Jorge García-Ortiz.  Pursuant thereto, no argument whatsoever is made herein as to these two defendants, as their request for summary dismissal has turned moot for all practical purposes.").  Not surprisingly, Defendants opposed this dismissal request.  The Court will have to deem the summary judgment motion unopposed against these two defendants

---

[3] The Court previously dismissed Plaintiffs' due process and equal protection claims.  *See* Docket No. 97.  Any other federal claim that could be found in the complaint has not been argued and is deemed waived.  *See Snyder v. Collura*, 812 F.3d 46, 51 (1st Cir. 2016), cert. denied, 136 S. Ct. 2517 (2016) ("In short, to the extent that the complaint left [Plaintiff] leeway in picking his legal theories, the point at which he needed to reveal those theories passed well before he announced the theories that he now wishes to pursue. . . . To rule otherwise would be to turn an orderly marshalling of the reasons for and against dismissal of a claim into a game of whack-a-mole, with seriatim summary judgment proceedings not ending until the defendant manages to guess every possible legal theory upon which a plaintiff might rely to support a claim."); *Schneider v. Local 103 I.B.E.W. Health Plan*, 442 F.3d 1, 3 (1st Cir. 2006) (per curiam) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived." (citing *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995))); *Torres–Rios v. LPS Labs., Inc.*, 152 F.3d 11, 16 (1st Cir. 1998) (mere "hint of a possible additional claim" insufficient "[g]iven the absence of any development of such a claim" as the suit progressed).

[4] Curiously, Plaintiffs do not request a voluntary dismissal against the conjugal partnership formed by Ernesto Santiago-Zayas and his wife or the conjugal partnership formed by Jorge García-Ortiz and his wife.

unless Plaintiffs are allowed to voluntarily dismiss the claims against them.  Plaintiffs have taken that risk by ignoring the opposition deadline.

The Court turns to the relevant legal framework, saving a more in-depth factual discussion for the analysis.

## II.    APPLICABLE LAW

### A.  Federal Rule of Civil Procedure 56

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party."  *See Johnson v. Univ. of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013); *Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir. 2008) (citing *Thompson v. Coca–Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986); *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).  The analysis with respect to whether or not a "genuine" issue exists correlates with the burden of proof that a non-movant would have in trial.  "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  *Liberty Lobby, Inc.*, 477 U.S. at 255.  (applying the summary judgment standard while taking into account a higher burden of proof for defamation cases brought by public figures).  In order for a disputed fact to be considered "material" it must have the potential "to affect the outcome of the suit under governing law."  *Sands v. Ridefilm Corp.*, 212 F.3d 657, 660–661

(1st Cir. 2000) (citing *Liberty Lobby, Inc.*, 477 U.S. at 247–248); and *Prescott*, 538 F.3d at 40 (1st Cir. 2008) (citing *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The objective of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997) (citing Fed. R. Civ. P. 56(e) advisory committee note to the 1963 Amendment). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. *Shalala*, 124 F.3d at 306. Once the moving party makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The non-movant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence. *Maldonado–Denis v. Castillo Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994). The non-movant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'" *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990); *see also Suarez v. Pueblo Int'l.*, 229 F.3d 49, 53 (1st Cir. 2000) (stating that a non-movant may shut down a summary judgment motion only upon a showing that a trial-worthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." *Liberty Lobby, Inc.*, 477 U.S. at 247–248. Similarly, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir. 1996); *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

However, an unopposed motion for summary judgment should only be granted "if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3); *see also Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 25 (1st Cir. 2006) (when scrutinizing an unopposed motion for summary judgment, "the district court [is] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate.") (citing *Mullen v. St. Paul Fire and Marine Ins. Co.*, 972 F.2d 446, 452 (1st Cir. 1992) and *López v. Corporación Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir. 1991)); *Fontanez-Nunez v. Janssen Ortho LLC*, 447 F.3d 50, 55 (1st Cir. 2006) (citing *Torres–Rosado v. Rotger–Sabat*, 335 F.3d 1, 4 (1st Cir. 2003)).

When considering a motion for summary judgment, the Court must, at the expense of repetition, "draw all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation."  *Smith v. Jenkins*, 732 F.3d 51, 76 (1st Cir. 2013) (reiterating *Shafmaster v. United States*, 707 F.3d 130, 135 (1st Cir. 2013)); *see also Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir. 2010) ("we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions [or] rank conjecture."  (citing *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007)) (emphasis in original)).  Moreover, "we afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Tropigas De P.R. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (internal citations omitted).

Summary judgment is inappropriate where there are issues of motive and intent as related to material facts.  *See Poller v. Columbia Broad. Sys.*, 369 U.S. 470, 473 (1962)

(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982) ("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *see also Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 433 (1st Cir. 2000) (finding that "determinations of motive and intent . . . are questions better suited for the jury").

The Court must review the record as a whole and refrain from engaging in the assessment of any credibility or determine the weight of the evidence presented. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); *Liberty Lobby*, 477 U.S. at 255; *see also Pina v. Children's Place*, 740 F.3d 785, 802 (1st Cir. 2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves*, 530 U.S. at 150 (quoting *Liberty Lobby*, 477 U.S. at 250-51).

However, "[t]he judge's inquiry . . . unavoidably asks whether reasonable jurors could find . . . that the [party who has the burden of proof] is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Liberty Lobby*, 477 U.S. at 252 (citing *Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872)) ("evidence" alteration and emphasis in original).

## B. Local Rule 56

Local Rule 56 (formerly Local Rule 311.12) requires a motion for summary judgment to be "supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." D.P.R.R. 56(b). Each of these facts in the numbered paragraphs

"shall be supported by a record citation."  *Id*.; *see also Alsina-Ortiz v. Laboy*, 400 F.3d 77, 80 (1st Cir. 2005).

The party opposing summary judgment is also required to submit its own "separate, short, and concise statement of material facts."  D.P.R.R. 56(c).  However, this statement of material facts "shall admit, deny or qualify" the moving party's statement of material facts by "reference to each numbered paragraph."  *Id.*  Further, unless one of the moving party's facts is admitted, the opposing statement of material facts "shall support each denial or qualification by a record citation."  *Id.*  In addition, the opposing party's statement of material facts may also contain "additional facts" in a "separate section . . . set forth in separate numbered paragraphs" that are each "supported by a record citation."  *Id.*

Next, if "replying to the opposition to a motion for summary judgment," the moving party "shall submit with its reply" yet another "separate, short, and concise statement of material facts which shall be limited to any additional facts submitted by the opposing party."  D.P.R.R. 56(d).  This latest statement of material facts "shall admit, deny or qualify those additional facts by reference to the numbered paragraphs of the opposing party's statement of material facts."  *Id.*  The rule is consistent: unless one of the opposing party's facts is admitted, the reply's statement of material facts "shall support each denial or qualification by a record citation."  *Id.*

The rule next goes into some detail defining what constitutes a proper "record citation."  Specifically, the rule requires that every "assertion of fact set forth in a statement of material facts . . . be followed by a citation to the specific page or paragraph of identified record material supporting the assertion."  D.P.R.R. 56(e).  It should be noted that "[t]he court may disregard any statement of fact not supported by a specific citation to record

material properly considered on summary judgment." *Id.* Moreover, a properly supported assertion of fact contained in a statement of material facts "shall be deemed admitted unless properly controverted." *Id.* Finally, the Court emphasizes that it has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." *Id.*

The inclusion of this "anti-ferret" rule is designed to force the parties to "organize the evidence rather than leaving the burden upon the district judge." *Alsina-Ortiz*, 400 F.3d at 80. "Given this root purpose, we have held with a regularity bordering on the monotonous that parties ignore the strictures of an 'anti-ferret' rule at their peril." *Puerto Rico Am. Ins. Co. v. Rivera-Vazquez*, 603 F.3d 125, 131 (1st Cir. 2010) (citing *Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000)).

Notably, the First Circuit ruled that a fellow Puerto Rico district court "acted well within its discretion when it deemed as admitted a portion of [a party's] properly supported facts" when the opponent did not comply with Local Rule 56. *Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 31–32 (1st Cir. 2010). Specifically, the First Circuit itemized the opposing party's Local Rule 56 defalcations: (1) his opposition failed to "accept, qualify, or deny" certain facts listed by the moving party; (2) the opposition instead only argued that these facts were "irrelevant"; (3) the opposition "frequently fail[ed] to support denied facts with appropriate citations to the record"; and (4) the "response includes argumentation asserting numerous additional facts" that "are often unsupported by record citations," "not numbered," and "are not 'contain[ed] in a separate section.'" *Id.*

## C. First Amendment Political Discrimination

In the instant case, Plaintiffs invoke a cause of action under 42 U.S.C. § 1983 grounded upon alleged violations of their First Amendment rights.  Section 1983 "was enacted pursuant to the authority of Congress to enforce the Fourteenth Amendment." *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982).  However, § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *See Baker v. McCollan,* 443 U.S. 137, 145, n. 3 (1979); *Albright v. Oliver*, 210 U.S. 266 (1994); *Lockhart-Bembery v. Sauro*, 498 F.3d 69, 74 (1st Cir. 2007); *Cruz-Erazo v. Rivera-Montañez*, 212 F.3d 617 (1st Cir. 2000).  In its entirety, the statute reads as follows:

42 U.S.C. § 1983 Civil action for deprivation of rights
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To summarize the abovementioned statute, when assessing the imposition of liability under § 1983, we must ask "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir. 1989) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).  Acting under color of state law requires that "the defendant in a

§ 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)).  Despite not being one of the fifty states of the union, § 1983 applies to the Commonwealth of Puerto Rico with equal force.  *See Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 146 (1st Cir. 2002).

In order to satisfy the second § 1983 prong on a political discrimination theory, a plaintiff must establish four prima facie elements in order to prevail: (1) "that the protagonists are members of opposing political parties"; (2) "that the defendant knows of the plaintiff's political affiliation"; (3) "that an adverse employment action occurred"; and (4) "that political affiliation was a substantial or motivating factor behind the adverse action."  *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (citing *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012)).[5]  However, even when a plaintiff complies with these four factors, a defendant is not without recourse.

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) is a landmark First Amendment case that has become a favorite of defense attorneys.  "Although *Mt. Healthy* was a freedom of speech case, it is routinely applied to political discrimination cases" such as this.  *Sanchez-Lopez v. Fuentes-Pujols*, 375 F.3d 121, 130 (1st Cir. 2004) (citing *Padilla–Garcia v. Guillermo Rodriguez*, 212 F.3d 69, 74 (1st Cir. 2000)).

---

[5] Although yet to be addressed by the First Circuit, it would appear that these elements may have to be relaxed in light of *Heffernan v. City of Paterson, N.J.*, 136 S.Ct. 1412 (2016) (establishing that political discrimination can occur when the employer takes an adverse employment action based on the mistaken belief that the employee supported an opposing political party).  However, the Court need not explore these possibilities as the case is disposed of on *Mt. Healthy* grounds.

*Mt. Healthy* establishes a burden-shifting framework. "First, the plaintiff must show that his political affiliation was a 'substantial or motivating factor' in the adverse employment decision." *Reyes-Perez v. State Ins. Fund Corp.*, 755 F.3d 49, 54 (1st Cir. 2014) (citing *Padilla–García*, 212 F.3d at 74). A careful reading reveals that this is the same showing required under the fourth prima facie prong. Once this showing is made, the burden shifts to the defendant as follows:

> The Supreme Court's decision in *Mt. Healthy* established that even if a plaintiff can demonstrate that her political affiliation was a substantial factor in the adverse employment action taken against her, there is no constitutional violation if the defendant can show both (i) that it would have taken the same action in any event, and (ii) that it would have taken that action for reasons that are not unconstitutional. *See Mt. Healthy*, 429 U.S. at 286–87, 97 S.Ct. 568.

*Sanchez-Lopez*, 375 F.3d at 124. The aforementioned *Mt. Healthy* requirements must be satisfied "by a preponderance of the evidence." *Reyes-Perez*, 755 F.3d at 54 (citing *Díaz–Bigio v. Santini*, 652 F.3d 45, 52 (1st Cir. 2011) and *Guilloty Perez v. Pierluisi*, 339 F.3d 43, 51 (1st Cir. 2003)).

If not for the *Mt. Healthy* defense, a defendant could be held liable for an adverse employment action that was not caused by political discrimination. *See Sanchez-Lopez*, 375 F.3d at 131 ("even if a plaintiff meets his or her initial burden of showing that political affiliation was a motivating factor for an employment decision, that is insufficient to establish discrimination as a matter of law because the plaintiff's case at that point does not 'distinguish[ ] between a result caused by a constitutional violation and one not so caused.' *Mt. Healthy*, 429 U.S. at 286."). There is certain logic to this *Mt. Healthy* doctrine: "to adopt a view of causation that focuses solely on whether protected conduct played a part in an employment decision . . . would put an 'employee in a better position as a result of the

exercise of constitutionally protected conduct than he would have occupied [otherwise].'" *Id.* (citing *Mt. Healthy*, 429 U.S. at 285).

"If the defendant succeeds in carrying its burden of persuasion as to its *Mt. Healthy* defense, the plaintiff may then 'discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor.'" *Reyes-Perez*, 755 F.3d at 55 (citing *Padilla-García*, 212 F.3d at 77). However, "[i]t must not be misconstrued to say that after the defendant has successfully established a *Mt. Healthy* defense, the burden of persuasion shifts back to the plaintiff." *Reyes-Orta v. Puerto Rico Highway & Transp. Auth.*, 811 F.3d 67, 73 (1st Cir. 2016) (citing *Padilla-García*, 212 F.3d at 77-78).[6]

### III.   LEGAL ANALYSIS

The Court is called upon to weigh in on two issues: (1) Plaintiffs' motion for voluntary dismissal as to two of the defendants and (2) Defendants' motion for summary judgment. These motions shall be addressed in turn.

---

[6] The First Circuit recently compared and contrasted the *Mt. Healthy* and *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04 (1973), burden shifting schemes:

> Although similar at first blush to the familiar *McDonnell Douglas* burden-shifting scheme used in Title VII and other employment discrimination cases, *Mt. Healthy* is different. Under the three-step *McDonnell Douglas* test, the plaintiff retains the burden of persuasion at all times. At the second step, the defendant's burden of production is only to articulate some legitimate non-discriminatory reason for its actions; the burden then shifts back to the plaintiff to show that the articulated reason is pretextual. However, under *Mt. Healthy*, there is no third step; the burden of persuasion does not shift back to the plaintiff. To establish a successful *Mt. Healthy* defense, it is the defendant's responsibility to persuade the factfinder that it would have made the same decision even if the illegitimate reason had not been a factor. *See Welch v. Ciampa*, 542 F.3d 927, 941 (1st Cir.2008); *Padilla–García v. Guillermo Rodriguez*, 212 F.3d 69, 77–78 (1st Cir.2000).

*Reyes-Orta*, 811 F.3d at 73-74 (footnotes omitted).

### A. Motion for Voluntary Dismissal

As previously alluded to, Plaintiffs filed a motion for voluntary dismissal without prejudice against two defendants: Ernesto Santiago-Zayas and Jorge García-Ortiz. Plaintiffs filed this motion on the due date for the response to Defendants' motion for summary judgment.  The opposition to the summary judgment motion, by Plaintiffs' own admission, provides "no argument whatsoever . . . as to these two defendants, as their request for summary dismissal has [supposedly] turned moot for all practical purposes." *See* Docket No. 141 at p. 2, footnote 1.

It would appear that this cryptic, one-page motion for "voluntary dismissal" invokes Federal Rule of Civil Procedure 41(a).  *See* Docket No. 140; *see also* § 2362 Voluntary Dismissal—In General, 9 Fed. Prac. & Proc. Civ. § 2362 (3d ed.) (acknowledging that "the sounder view and the weight of judicial authority" is that dismissing "one of several defendants" is properly brought under Rule 41(a)) (collecting cases).  As Defendants have all answered the complaint, filed a motion for summary judgment, and do not stipulate to dismissal, the only way the "action" against these defendants may be voluntarily dismissed is if the Court so orders.  *See* Fed. R. Civ. P. 41(a) (unless the "opposing party serves either an answer or a motion for summary judgment" or "a stipulation of dismissal [is] signed by all parties who have appeared," "an action may be dismissed at the plaintiff's request only by court order.").

"[A] district court should grant a motion for voluntary dismissal unless a defendant can show that it would suffer some plain legal prejudice as a result thereof, as opposed to facing the mere prospect of a second lawsuit."  *Cason v. Puerto Rico Elec. Power Auth.*, 770

F.3d 971, 976 (1st Cir. 2014) (citing *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 161 (1st Cir.

2000)). The First Circuit has further elaborated on the analysis required under Rule 41(a)(2):

> In deciding whether to grant a Rule 41(a)(2) motion, courts typically look to "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir.1969); *accord* [*Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir.1994)]. But, courts need not analyze each factor or limit their consideration to these factors. *See Tyco Labs., Inc. v. Koppers Co.*, 627 F.2d 54, 56 (7th Cir.1980) ("The enumeration of the factors to be considered in *Pace* is not equivalent to a mandate that each and every such factor be resolved in favor of the moving party before dismissal is appropriate. It is rather simply a guide for the trial judge, in whom the discretion ultimately rests."); *see also Kern v. TXO Prod. Corp.*, 738 F.2d 968, 971 (8th Cir.1984) ("The very concept of discretion presupposes a zone of choice within which the trial courts may go either way [in granting or denying the motion].").

*Urohealth*, 216 F.3d at 160.

Three of the four aforementioned *Pace* factors are not in Plaintiffs' favor. First, Defendants have expended significant "effort and expense" for a trial that was scheduled to begin only twelve (12) days after the summary judgment filings were to be completed. *See* Docket No. 138. In fact, the timely response to this motion for voluntary dismissal was filed about three weeks before trial was scheduled. *See* Docket Nos. 138, 140, and 145. Hence, defense counsel was forced to assume that this motion would be denied and prepare for a trial involving all named defendants. Second, Plaintiffs' one-sentence "explanation for the need to take a dismissal" to "simplify this case and bring to trial only the main culprits" is clearly "insufficient." *See* Docket No. 140. Third, "the fact that a motion for summary judgment has been filed by" Defendants is also not in Plaintiffs' favor. Once again, the reality that this motion was, by Court order, filed so close to the scheduled trial date only enhances Defendants' opposition to voluntary dismissal.

In addition to these three *Pace* factors, there is another fact that merits attention. At the outset, it should be noted that Defendants are composed of a state agency (SIFC), state officers, and conjugal partnerships composed of each state officer with their respective spouse. When state entities and officers are sued for actions such as these, each defendant is entitled to free legal representation to be provided by the Commonwealth of Puerto Rico under Law 9. Defendants have all exercised said right in this case. In practice, each individual defendant in a multi-defendant case is assigned the same attorneys. This way of operating reduces costs and promotes efficient litigation. The state, the parties, and the Court all benefit from these advantages. However, the fruits of this practice spoil when one case is split in two. There is a real possibility that that would happen here because Plaintiffs seem poised to file another action against these two defendants. Therefore, the interests of justice dictate that Plaintiffs' motion for voluntary dismissal without prejudice be denied.

## B. Motion for Summary Judgment

All that remains, then, is Defendants' motion for summary judgment. Once again, it should be noted that Plaintiffs have not opposed the motion with respect to defendants Ernesto Santiago-Zayas and Jorge García-Ortiz. *See* Docket Nos. 140 and 141 at p. 2, footnote 1. This journey begins with a review of another case arising from the same controversy.

### i.   The Blueprint

The pending summary judgment controversy is eerily similar to that of *Reyes-Perez*. *See Reyes-Perez*, 755 F.3d 49. In said case, the plaintiff was also a PDP supporter and SIFC employee who had his appointment nullified in a parallel audit by the same administration.

The plaintiff in said case was appointed to a trust position in the SIFC while the PDP had control of the executive branch. "[A]s it became clear the opposing party might win an upcoming election," the plaintiff "was moved into a career position" as part of a "larger restructuring" of the SIFC. *Id.* at 50-51.

Once Zoimé Álvarez-Rubio—who is also a defendant in this case—was appointed as the new SIFC Administrator, she "undertook several investigative audits to determine whether her predecessor's reorganization conformed to the new administration's view of local laws." *Id.* at 51. "After a review of the 3,835 personnel files of SIFC employees, the investigation concluded that 232 files chronicled personnel transactions that violated . . . the merit principle . . . because positions were filled via internal job announcements rather than public postings." *Id.* "[T]he SIFC undertook a second evaluation of personnel actions, this time focusing on the three reclassifications . . . from trust to career positions." *Id.* "This audit investigation . . . concluded that all three . . . reclassifications from trust to career positions violated the merit principle for failing to comply with any of the [applicable] requirements." *Id.* at 52. Accordingly, the SIFC nullified the reclassification of the plaintiff's position, which effectively returned him to "trust" position status. The plaintiff was subsequently terminated because he no longer had a right to reinstatement under this "trust" status.

The plaintiff brought a political discrimination claim into federal court. The defendants moved for summary judgment on two grounds: (1) "that there was no evidence in the record that supported a prima facie case of political discrimination" and (2) "that even if plaintiff could make out a prima facie showing, his claim fails under the *Mt. Healthy* doctrine." *Id.* at 53. The district court sidestepped the first contention by assuming that there was a prima

facie case and granted summary judgment on *Mt. Healthy* grounds.   The First Circuit affirmed using the same methodology.

The First Circuit reasoned that the SIFC "would have taken the same action against the [plaintiff] even in the absence" of his political affiliation.  *See Id.* at 54.  The reviewing court supported their determination on all of the following grounds: (1) the "plaintiff's elevation to a career position was plainly in violation of Puerto Rico's merit principle," (2) the "reversion of the SIFC's organizational structure to its [prior] status . . . was approved by the SIFC's Board of Directors" and "not spearheaded by [the administrator] acting independently," (3) the "audit . . . was not . . . targeted exclusively at plaintiff's particular corner of the organization, . . . but rather was an entity-wide investigation," (4) "[t]here is no evidence that this entity-wide audit targeted individuals from a particular party," (5) "[b]oth audits were geared toward positions, not persons," (6) "[p]laintiff has not proffered any evidence from which an inference can be drawn that the Audit Report's findings were based on political considerations," and (7) "[p]laintiff has not proffered any evidence from which an inference can be drawn . . . that there was differential treatment of the individuals that held the other two improperly reclassified positions."   *Id.* at 54-55 (internal citations and alterations omitted).

Accordingly, the First Circuit found that the defendants carried their *Mt. Healthy* burden by showing "the SIFC underwent a comprehensive organizational restructuring, which included the identification and correction of various employment-related transactions that violated Puerto Rico's merit principle."  *Id.* at 55.  The First Circuit next ruled that "plaintiff has failed to produce any evidence that undermines defendants' proffered nondiscriminatory reasons for his reclassification and later termination."  *Id.* (citing *Cepero-Rivera v. Fagundo*,

414 F.3d 124, 133 (1st Cir. 2005)).  Hence, "[d]efendants' *Mt. Healthy* defense end[ed] the matter."  *Id.*

### ii.  Climbing *Mt. Healthy*

*Reyes-Perez* casts a shadow over the controversy at hand.  Much of the same reasoning used to grant summary judgment in the *Reyes-Perez* also applies to this case. The Court begins—as the *Reyes-Perez* court did—by assuming that there is prima facie case of political discrimination.[7]  Next, the Court must decide whether Defendants can show that they would have dismissed or demoted Plaintiffs regardless of their political affiliations. *See Mt. Healthy*, 429 U.S. at 286-87.

When conducting this tamisage, the Court looks towards the parties' briefs and statements of uncontested material facts.  The summary judgment record is replete with Local Rule 56 violations, most of which fall on Plaintiffs' laps.  Therefore, in the spirit of our longstanding anti-ferret rule, each properly supported assertion of fact is deemed admitted unless properly controverted.  "This, of course, does not mean the unopposed party wins on summary judgment; that party's uncontested facts and other evidentiary facts of record must still show that the party is entitled to summary judgment."  *Fontanez-Nunez*, 447 F.3d at 55 (citing *Torres–Rosado*, 335 F.3d at 4).  Finally, the Court notes that, "[l]ike Rule 56 itself, the local rule makes clear that its focus is on facts, not speculation or argumentation. Moreover,

---

[7] It is worth recognizing that Plaintiffs are unable to comply with the second prima facie prong—Defendants' knowledge of Plaintiffs' political affiliations—because it is effectively uncontested that: (1) the defendant Zoimé Álvarez-Rubio—the administrator and highest ranking officer of the SIFC—did not know Plaintiffs before working at the SIFC and has never even communicated with Plaintiffs, Docket No. 132-1 at ¶ 17 (objected to on relevancy grounds but now overruled; effectively uncontested) and (2) none of the defendants ever had "any knowledge" of Plaintiffs' political affiliations, *id.* at ¶ 18 (objected to on relevancy grounds but now overruled; effectively uncontested).  However, this is not so clear when considering whether this prong should be relaxed in light of recent Supreme Court precedent.  *See Heffernan*, 136 S.Ct. 1412 (establishing that political discrimination can occur when the employer takes an adverse employment action based on the mistaken belief that the employee supported an opposing political party).  The Court sidesteps this query and turns to the more clear-cut *Mt. Healthy* precedents.

these facts must be material." *Tropigas*, 637 F.3d at 56-57 (1st Cir. 2011). With this in mind, the Court may begin.

At some point in 2009, the SIFC conducted an audit on every one of their 3,835 employees, which "revealed that between January 1, 2001[,] and December 31, 2008, [232] appointments were made through internal job postings and not by open competition . . . in violation of the SIFC's Personnel Manual and [Puerto Rico's] merit principle." Docket No. 132-1, ¶ 8 (improperly contested statement of material fact[8]); *see also Gonzalez-Segarra*, 188 D.P.R. 252 (unnumbered English translation available on WestLaw search engine); *Reyes-Perez*, 755 F.3d at 51. Hence, at least for purposes of summary judgment, these 232 appointments are deemed illegal. It is uncontested that "**all** of those personnel transactions made at the SIFC" that did not comply with the merit principle or the personnel manual were "declared null and void," without exception. *Id.* at ¶ 10 (Plaintiffs contest the motive of the audit but not the fact that all of these illegal appointments were nullified without exception) (emphasis added). Every Plaintiff in this case is one of these 232 employees who had their illegal appointments nullified. *See* Docket No. 1, ¶¶ 16, 24, 31, 39, 46, 52, 57, 63, 72, 79, 86, and 92.

There is no evidence that the investigation into the legality of these appointments was aimed at Plaintiffs' "particular corner"; on the contrary, the record indicates that this was an

---

[8] Plaintiffs responded to this proposed statement of fact by claiming that these appointments were not in violation of the personnel manual and merit principle. Docket No. 142, p. 2, ¶ I B. 8. The problem is that Plaintiffs point to no contradictory evidence. *See Id.* Instead, Plaintiffs cross-reference 19 different paragraphs of their own statement of uncontested material facts, but they all miss the mark. *See Id.* Specifically, paragraphs 4-5, 9-14, and 26-33 all attempt to challenge the motive for the audit itself, but not whether the nullified appointments were legal. Next, paragraph 20 challenges the adequacy of the audit report by stating that it does not contain "any independent analysis" for each particular employee. Yet, the cited audit report quite clearly indicates that each employee file was searched for documentation that would support an exception to the merit principle's open-competition requirement. *See* Docket No. 142-11 at p. 9. Finally, in violation of Local Rule 56, paragraph 22 is not properly supported by the cited deposition testimony. In the end, this devastating statement of material fact is effectively unchallenged.

entity-wide audit.  It is undisputed that the order given was that "**all** of the SFIC's personnel records, as well as all of the personnel transactions related to the administration of the SFIC's Human Resources that were carried out from January 1, 2001[,] to December 31, 2008, be reviewed." *See* Docket No. 132-1, ¶ 3 (Plaintiff contests the motive for the action but not the action itself) (emphasis added).  The fact that the investigation did not look into personnel transactions occurring before January 1, 2001, is not surprising because the last SIFC investigation of this sort occurred at "the beginning of 2001." *Id.* at ¶ 7 (Plaintiff contests the motive for the challenged 2009 investigation but not the time of the prior 2001 investigation).  Hence, it would appear that both political parties conducted similar audits.

"There is no evidence that this entity-wide audit targeted individuals from a particular party." *Reyes-Perez*, 755 F.3d at 54.  "Prior to working at the SIFC," the defendant Zoimé Álvarez-Rubio—the administrator and highest-ranking officer of the SIFC—"did not know the plaintiffs of this case." *Id.* at ¶ 17 (objected to on relevancy grounds but now overruled; effectively uncontested).  Further, this defendant "did not have any type of communication with any of the plaintiffs, much less [any] pertaining to politics or political ideologies." *Id.* at ¶¶ 17 and 18 (objected to on relevancy grounds but now overruled; effectively uncontested).  Moreover, none of Defendants had "any knowledge" of Plaintiffs' political affiliations. *Id.* at ¶ 18 (objected to on relevancy grounds but now overruled; effectively uncontested).

Plaintiffs attempt to resist a summary judgment on *Mt. Healthy* grounds by arguing that the "decision to 'audit' the personnel transactions" between 2001 and 2008, which is when the PDP was in power, "was taken to single out and discriminate against perceived PDP employees." *See* Docket No. 141 at p. 3.  Also, that any legitimate reason provided by

Defendants is a sham to hide their true discriminatory intentions. *See Id.* at p. 5. This heavy rhetoric, however, rests on a shaky foundation.

The Court has scoured the summary judgment record in search of support for Plaintiffs' bold proclamation. Careful inspection has revealed that only the following arguments merit mention: (1) that the "atmosphere at the SIF[C] . . . was highly political," Docket No. 142 at p. 7, ¶ 12; (2) that "[s]ome of the plaintiffs" were substituted in their employment by less-qualified NPP supporters, Docket No. 142 at p. 12, ¶ 32; (3) that the audit focused on all personnel transactions from January 1, 2001, to December 31, 2008, which is when the PDP was in power, Docket No. 142 at p. 13, ¶ 13; and (4) that the SIFC's post-audit actions had a "disparate impact" on PDP employees, Docket No. 141 at pp. 9-10.[9]  The Court addresses these in turn.

First, Plaintiffs claim that they have shown that the "atmosphere at the SIF[C] . . . was highly political." *See* Docket No. 142 at p. 7, ¶ 12. Yet, "a politically charged atmosphere . . . , without more, provide[s] no basis for a reasonable inference that defendants' employment decisions about *plaintiff* were tainted by their disregard of *plaintiff's* first

---

[9] Plaintiffs' other arguments are either subsumed within those already mentioned, not supported by record citations, based on hollow speculation, or meritless. It is worth noting that Plaintiffs' statement of uncontested material facts exemplifies some of these points. Paragraphs 1 and 18 are improperly supported by an untranslated Spanish-language deposition. D.P.R.R. 5(g); 48 U.S.C. § 864; *United States v. Vazquez Guadalupe*, 407 F.3d 492, 499 (1st Cir. 2005) ("Evidence in another language which is presented must be translated into English."). Paragraphs 2 and 3 are improperly supported by inadmissible hearsay. *See Garside*, 895 F.2d at 50 ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."). Paragraph 4 is also improperly supported by inadmissible hearsay and does not properly cite the page number of the referenced deposition. Paragraph 5 references a picture of a cake also with untranslated Spanish writing that is not properly authenticated by the referenced deposition testimony. Paragraph 9 does not have proper support for the statement that a defendant sold NPP tickets to "SIFC providers." Paragraph 15, 21, 22, 24, and 29 are not properly supported by the record citations. The claim in paragraph 23 that budgetary reasons were raised is not supported. Paragraph 26 is an improperly supported argument; in reality, the exhibit demonstrates that the defendant-auditor had his own appointment nullified because of the audit, but was reinstated as a trust employee with less job protection. With respect to paragraph 30, the cited exhibit does not support the proposition that a defendant and his secretary made the statements. Paragraph 33 is based on testimony of a witness who, without justification and in contravention of Rule 26, was not identified during discovery. *See* Fed. R. Civ. P. 26. The interests of justice require that this witness be excluded. *See Harriman v. Hancock Cty.*, 627 F.3d 22, 30 (1st Cir. 2010).

amendment rights." *LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir. 1996) (emphasis in original) (citing *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 58 (1st Cir. 1990) (overruled on other grounds)).  In this case, the "politically charged atmosphere" allegation means nothing because it is effectively uncontested that none of Defendants had "any knowledge" of Plaintiffs' political affiliations, every single SIFC employee at the time had their employment file investigated for appointment irregularities, and all illegal appointments were nullified.  It is difficult to attach evidentiary value to there being a "politically charged atmosphere" when Defendants did not have "any knowledge" of Plaintiffs' political affiliation and there is no other properly identified or supported evidence linking Defendants to having created or participated in this political atmosphere.  *See Tropigas*, 637 F.3d at 56 ("we afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." (internal citations omitted)).

Second, Plaintiffs claim to be able to show that "[s]ome of the plaintiffs" were substituted in their employment by less-qualified NPP supporters.  The problem is that this assertion relies on unsupported speculation.  To be clear, Plaintiffs sustain this asseveration with a combined five total interrogatory answers between four different plaintiffs.  Three of the four plaintiffs simply conclude that their position, along with others, were given to unnamed NPP employees who are supposedly less qualified or less experienced than them.  The fourth plaintiff concludes the same thing but at least includes the name of the NPP employee who replaced her.  Plaintiffs are essentially asking the Court to accept the unsupported conclusion that the NPP replacements—only one of whom is named—are less qualified than Plaintiffs are without providing any reasonable inference that this could be the

- 23 -

case. That is too much to ask. Something more than these bare allegations is required to survive summary judgment. *See* D.P.R.R. 56; *Ayala–Gerena*, 95 F.3d at 95 (summary judgment is appropriate where the nonmoving party rests on "conclusory allegations, improbable inferences and unsupported speculation." (reiterating *Medina-Muñoz*, 896 F.2d at 8).

Third, Plaintiffs claim that they can circumstantially show that Defendants intended to discriminate by choosing to audit all personnel actions from January 1, 2001, and December 31, 2008, which is precisely when the PDP was in power. However, as previously alluded to, it is effectively undisputed that the last personnel audit occurred at the beginning of 2001. Moreover, it is also uncontested that the NPP came into power and appointed the new administrator in 2009. Therefore, ordering an investigation for all the time in between is far from suspicious. The fact that every single illegal appointment was nullified further strengthens this finding. Plaintiffs point to no evidence that would seriously suggest that the audit was anything but legitimate.

Fourth, Plaintiffs claim that the SIFC's actions had a "disparate impact" on PDP employees. While there is no "disparate impact" claim "available under this First Amendment doctrine," "a jury might consider this impact as evidence that defendants would not have taken the same action" regardless of Plaintiffs' political affiliation. *See Sanchez-Lopez*, 375 F.3d at 140 ("It is in the nature of a change in administrations that job actions by the new party in power will have a disparate impact on members of the outgoing party." (reiterated in *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 154 (1st Cir. 2006))). However, "[e]vidence of the audit's disparate impact is not sufficient by itself to rebut a *Mt. Healthy* defense." *Reyes-Orta*, 811 F.3d at 78 (citing *Velez-Rivera*, 437 F.3d at 154). This is so

"[e]ven if all of the personnel actions during the relevant period involved [PDP] members." *Vélez–Rivera*, 437 F.3d at 154.  Therefore, even if this "disparate impact" argument had evidentiary support, which is at least debatable, it would not be enough to resist Defendants' powerful *Mt. Healthy* argument.

In the end, even when evaluating these arguments collectively, there is still no more than a scintilla of evidence that Plaintiffs' political affiliations were the cause of Defendants' actions.  *See Liberty Lobby*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").  Thus, Plaintiffs' political discrimination claim must be dismissed.

## IV.   STATE LAW CLAIMS

As no federal claim survives and there is no diversity jurisdiction, all that remain are supplemental state law claims.  Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction" when "all claims over which it has original jurisdiction" have been "dismissed."   After careful consideration, the Court declines to exercise supplemental jurisdiction over the remaining state law claims for several reasons.

First, all original federal jurisdiction claims have been dismissed before trial.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").  Second, the local courts are much better positioned to handle the remaining claims, which are based on, *inter alia*, four provisions of the Puerto Rico constitution that have yet to be properly addressed by the parties in this case.  *See* Docket No. 1 at p. 4, ¶ 9.  And third, as previously alluded to, much of the

evidence is in Spanish—the official language of Puerto Rico courts—and has yet to be translated.  Hence, all pending state law claims are to be dismissed, but without prejudice.

## V.    OUTRO

For all of the foregoing reasons, Plaintiffs' motion for voluntary dismissal against two defendants is **DENIED** and Defendants' motion for summary judgment is **GRANTED**.  The Court determines—after weighing all of the pertinent factors—that the interests of justice counsel against allowing Plaintiffs to dismiss their claims without prejudice and potentially bifurcate this case.  Thereafter, because of the lack of evidence and several procedural faults, the Court found that Plaintiffs are unable to knock Defendants off *Mt. Healthy*.  Finally, after considering its underlying policies, the Court declines to exercise supplemental jurisdiction over all remaining state law claims.  Thus, Plaintiffs' First Amendment political discrimination claims are **DISMISSED WITH PREJUDICE** and all other state law claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2017.

*/S/ Daniel R. Domínguez*
DANIEL R. DOMÍNGUEZ
United States District Judge